Case number 19-3483 from the District of Nebraska, United States v. Connie Moreno. Mr. Hanson. Good morning, Your Honor, if you would please accord. I'm Michael Hanson of Perry on behalf of Connie Estrella Moreno, the appellate in this matter. She appeals from the adverse ruling on her motion to suppress evidence. She argued that her right to be free from unreasonable search and seizure under the law was violated when Sergeant Miola, while investigating interdiction at the bus station in Omaha, Nebraska, which is just a few blocks from where Judge Graz and I sit, she argues that the touching and manipulation of a bulge that Sergeant Miola perceived was done in violation of the Fourth Amendment. It wasn't based on a reasonable suspicion. It wasn't based on probable cause. We would ask the court to rule that Judge Rossiter was clearly wrong in his factual finding that Sergeant Miola initiated a protective frisk by touching Moreno's outer clothing and the bulge he saw under her shirt. The magistrate judge that heard the witnesses, listened to the evidence, reviewed the video, ruled that it was not a protective frisk. It was not a pat down. She called it the touching of the bulge. It was a search done without probable cause. The law on facts on cases such as this has been well established for over 20 years. A number of these cases arise right out of Omaha, Nebraska. In terms of looking at reasonable suspicion analysis of a bulge or something of the like, we go back all the way to Veronica Stockio, Paul Ray Jones. In Jones, this court found that a bulge in and of itself does not provide reasonable suspicion for a pat down. In that case, though, the officer testified that he wasn't sure what it was and there were other words and acts in this case that aren't there. What do you say to that? Well, the officer, Sergeant Miola, did testify that the bulge could have been a book. So, he did testify that he was unclear what it could have been. And, again, that's along the lines of the officer in Mr. Jones' case, that he wasn't sure what it was. Again, before the search happened, before the touching and manipulation of the bulge I'm sorry, and I ask a compound question. I deserve the answer. But my point is, weren't there more facts here in this Marino case than in Jones? You know that the ticket, you know all of them, travel plans didn't match, ticket, luggage tag, check, speech, time, visibly nervous, shaking. Go ahead. Yes. All of the facts that you mentioned and the bulge underclothes, the shaking of the hands when she handed over the bus ticket. Those do not amount to a reasonable suspicion of criminal activity. Again, looking at other cases such as Aquino, Tovaro, Valdivia, all those cases set a clear path for what law enforcement can and can't do, a bright line that Sergeant Miola clearly crossed. So, at its inception, there was no reasonable suspicion and the touching and manipulation of the bulge was not supported by a reasonable suspicion. But even going on and setting semantics aside, the actions of Sergeant Miola were not appropriate, were not appropriately limited in scope. They were not the least intrusive means reasonably necessary to protect officer safety. And again, I point to page 925 of the Aquino opinion. This court set out the exact framework as to what law enforcement officers should and shouldn't do to apply the limited scope and apply no reasonable means more intrusive than the reasonably necessary. Well, you said the magic word intrusive to me and that got my attention because this is a little different case where it's a blanket or a shawl or something. I've looked at the video, but something like that and then she turns away and we have a case where we say a turn is enough for reasonable suspicion. So is it different where it's a complete outer garment like that and someone turns away? As far as the outer garment, I don't believe there's any different, meaningful difference in terms of facts between the pant leg in Aquino and the outer garment, which was a blanket that Ms. Moreno was wearing. In terms of the turning away, if you've watched the video. I think Judge Erickson had a question, I thought. Did I misread you? I misread you. Go ahead. Counselor, let me ask this. Was the book shaped object under the shawl or under her clothing under the shawl? Under the clothing, under the shawl. And if you watch the video, you can see the line that Sergeant Miola was testifying about. But Judge Benton, back to your question. If you've watched the video, he gave her a number of instructions and I believe she was trying to follow those instructions as best she could under those circumstances. So I don't believe the turning away was anything other than she was trying to follow the directions of Sergeant Miola. And to take her attempt at following his directions as indicia of reasonable suspicion, I just don't believe that's appropriate. Back to what I was talking about in terms of Aquino, though, and again, that took place with another Omaha law enforcement officer, the infamous Sergeant Lutter. Sergeant Lutter, this court, again, set out on page 925 of Aquino, set out clear lines as to what law enforcement should and should not do. It basically said, Sergeant Lutter should have conducted a pat down on the outside of Aquino's leg and instead he went, had lifted up the pant leg and went right to the bulge underneath. Counsel, time is passing quickly, so I'm going to interrupt if I could here. I do think this is a very important case. I think we need to hone in on the factual differences between this and some of our prior cases. In the Roggeman decision, the presence of a bulge was considered a substantial factor in reasonable suspicion for a protective search. Now, in that case, the bulge was in a pocket, which would seem to be readily accessible. Is there a difference between that case and this one in terms of the location, size, and shape of the bulge, and does that make a legal difference? Judge, I do believe that's a difference. Because it was in a pocket, reasonably accessible, it possibly could have been a weapon. The testimony in this case was the officer was concerned it could have been a bomb, but as soon as he touched it, he believed it was a kilo package of drugs. It wasn't reasonably accessible to my client because it was under her garments. Again, how a package is, a kilo-sized package of drugs is different from a bomb, that wasn't explained on the record. But the officer, in terms of concerns for officer safety, in Roggeman, the officer was concerned that there might have been a weapon in that pocket. Here, there was no testimony about officer safety, other than it could have been a bomb, it could have been a book, and as soon as he touched it, he believed it was a kilo-sized package of drugs. Again, the concern for officer safety here is non-existent. All the facts that, everything that drew the officer's attention was related to drugs. Again, going back to the brief... So in that regard, counsel, what about our case in U.S. v. Bustos-Torres, where we basically talked about the prevalent relationship between drug trafficking and guns. Is there reasonable suspicion for protective search simply based on the totality of the circumstances when you're dealing with drug trafficking? Potentially, again, it's perceptions of the officer, and the court, the district court cited Hawkins, and in Hawkins, they were concerned about someone who they believed was armed and dangerous, and he fled, so it's understandable why they immediately pulled Hawkins' shirt up and saw the gun in his waistband. You look at all the facts and circumstances in this case, you have a little old lady at night in a bus station who's complying with all the directives of law enforcement. There is no concern for officer safety based on the facts and circumstances of this case. And again, back to my analysis in terms of the framework that this court set out on page 925 of the Aquino opinion. Searching under articles of clothing, this is from the court, searching under articles of clothing, whether it be a man's pant leg or a woman's blouse, is necessarily more intrusive than a pat down. Such search is thus not the least intrusive means necessary to protect an officer's safety and exceeds the permissible limits of a Terry investigatory detention. There's no factual difference between going under a woman's blouse or an outer garment, which is a blanket that she was wearing as an outer garment. I've argued from the inception of this case, it's basically the same thing, that this court has set out the framework for law enforcement to conduct a pat down. That did not happen here. The district court is clearly wrong when Judge Rossiter said this was a protective frisk. It was neither protective nor a frisk. But now you said, did you say clearly wrong? Do you believe that's our standard of review? On a factual finding, I believe that, and again, the judge said initiated a protective frisk, and I do believe that is a factual finding, not a mixed question of law and fact. Okay, so that would be a clearly erroneous stand. I believe that factual finding is under the clearly erroneous standard, and I believe the evidence bears it out that it is clearly wrong. The magistrate judge, our viewing court owes particular deference to the credibility findings of the judge who had the opportunity to observe the amenor and credibility of the witnesses. And here, the magistrate judge found that there was no protective frisk, that it was the touching and manipulation of the bulge, and she was highly skeptical of the claim that she might, of the officer's claim that she might be armed and dangerous. If there aren't any other questions at this point, I'll reserve my four minutes. Seeing none, you're right on the button for that. So, you can reserve the time. And, Mr. Schaller. Good morning, your honors. The district court, on de novo review of the magistrate judge's findings statutorily, found reasonably that there was reasonable suspicion to touch Ms. Moreno's bulge. There were very strong circumstances in this case that were much stronger than the cases that this court has previously looked at with bulges. They encountered Ms. Moreno in a heavy traffic place with very minimal security, where they were the only officers providing security. Ms. Moreno's potentially conflicting itinerary, her nervous demeanor, her unmarked luggage, without really any... Counsel, all of those things are true, but all of them go to reasonable suspicion of drug trafficking, rather than that she was armed and dangerous. So, how would you address that? For example, in the Eustaquio opinion, we said that the bulge did not even support a condition to conduct a Terry stop. And here, we've got a book-shaped bulge under her clothing. I think the critical point in Eustaquio that makes it, I think, entirely unhelpful in this case is, critically there, the district court found that the officers couldn't even see a bulge before they touched the bulge on Ms. Eustaquio's body. If there's that sort of finding in that case, I think it's hard to come to some sort of conclusion. Especially after this court said in Roggeman that's a substantial factor, seeing a bulge. I think it makes it manifestly different in this case that the bulge is clearly not a bulge. Counsel, let's talk about that a little bit because I think that's an important point. In the Roggeman decision, we did say this is a substantial factor, but what about the fact that it was in a pocket where it was reasonably, you know, very accessible if it was a weapon. Whereas here it's under her clothing and it looks like a book. Well, and that's a very fair question. And I think it's important to look at the context of where they were at, and it's important to consider Sergeant Mule as substantial training, including his counterterrorism training. So they're in a bus station as compared to an airport, which is higher security and has a lot more people around to monitor suspicious activity. These officers were the only, the interdiction officers were the only real law enforcement officers around. They're in a very high traffic place. And if you see a bulge that's a square that someone's continually denying the existence of, even though it's clear, and they're making multiple movements to try to hide it, I think a very reasonable conclusion, as Sergeant Mule has said, my immediate and preliminary concern was that it could be a weapon, and specifically it could be a bomb, especially when you're in a very soft target like that. If he thought it was a bomb, why would he touch it and manipulate it? If he thought it was a bomb, I think it was a, you know, depending on the circumstances and the context in this case, the important thing is that, you know, he was trying to figure out the least intrusive means to determine what it was. And I think he had a reasonable basis to try to determine, is this a bomb? Is this a weapon? Is this something else? You know, we're in a place with a lot of different people with very little security. So, Counsel, how do we handle Minnesota v. Dickerson where the Supreme Court says that the search must be strictly limited to that which is necessary for the discovery of a weapon? Was he looking for a weapon or drugs? I think because he had a reasonable suspicion to believe that Miss Marina was armed and a protective wrist. And I think what he did was that he immediately went, as he testified, he immediately went to the biggest potential source of concern, which was this bulge. And upon touching the bulge, as he clearly testified that he could tell that it was contraband, I don't see a reason for him to have to have gone further and conducted a search for the rest of the body because upon touching the contraband and realizing what it was, he had a basis to arrest Miss Marina. So I think he was acting in the least intrusive manner because he went first directly to the source and upon touching the source and realizing what it was. After having Miss Marina put under arrest almost immediately, you would imagine that the potential danger had been alleviated by that. And I think that is the least restrictive or least intrusive means in this case. Counsel, you agree that you have to have both of them. In your answer there, I want to be sure you've got to both have criminal activity foot and you've got to have the other prong to dangerousness. Go ahead. No, I agree with you, Judge Benson. In this case, I'm not sure that the practical difference is very great because the district court found that the encounter was consensual up until Sergeant Miola touched her bulge. So the fact that you were looking at the time he touched the bulge, what does Sergeant Miola know? And I would say that it could be either reasonable suspicion that there's criminal activity such as drug trafficking going on or maybe even reasonable suspicion that there was potentially a bomb or someone who's going to pose a danger or potentially hurts one in such a low security place. I don't believe you discussed Minnesota v. Dickerson in your brief, but one of your cases, I'm not criticizing you. I do want you to address it, though, because it is the United States Supreme Court on a similar situation. They established certain rules. Do you want to address Minnesota v. Dickerson? Yes, Your Honor. I would say that what's been clear and set out in Minnesota v. Dickerson is the Supreme Court has been fairly consistent throughout its entire Terry case law. It's a very fact-heavy and very fact-specific question that you're addressing, both in terms of what the officers knew and what created reasonable suspicion and in the context in which officers might create a danger to officer safety. And I would say that that's an important element here, particularly given the very specific factual circumstances that we have. And I think that flows to even how this case is much different than a lot of the other cases that Ms. Moreno is relying on, including Johns and Tovar Valdez and Eustaquio, where you have a very different factual situation and much stronger circumstances to believe there is reasonable suspicion. Well, how similar are the facts here to Minnesota v. Dickerson? If you don't, you can pass and send us a letter or something. I can look further at it and submit a letter if necessary, but I think the facts here are fairly different in the fact that you have an officer who's looking at, in which you have someone who's behaving very, very suspiciously, someone who's trying to hide what's considered a clearly apparent bulge, and who's made a lot of furtive movements. And I think under this court's case law, and I think the case law more generally, Judge O'Meara was entitled to rely on those facts and rely on his training and his substantial experience in trying to determine whether there was an immediate danger and whether there was reasonable suspicion. So counsel, I'm going to circle back to it. It seems to me this case falls somewhere in between Dickerson and Roggeman. And so I'm just wondering, what significance is it in terms of the size, shape, and location of the bulge as between the two cases? Well, I think that in terms of the size, shape, and the bulge between the two cases, the important fact here, and I'll address your question more specifically, but I think kind of as an initial basis, as I mentioned before, the concern about a bomb or a weapon on someone's body, that strength, I think creates a reasonable suspicion of danger. And Roggeman... Counsel, let me stop you there. That seems plausible, but at the same time, if we go down that road, it seems to me that there would be a basis for a protective search of everyone's luggage, packages, and briefcases as well, because they might contain bombs, especially around September 11th. No, and I understand that. And there's a very specific factual circumstance here where if you have what's plainly visible as a bulge that's protruding from your body, and officers are making attempts to advocate that A, it's there, and Ms. Moreno opened up her shawl or her blanket twice, and she did so, and it became literally more and more apparent, even though she first turned around to try to hide it, and then she tried to lean forward to try to hide it, and denying the mere existence of a bulge I think is a substantial factor in this case. That's different than if an officer was just randomly seeing what looked like a bulge in a piece of luggage or what looked like something protruding out somewhere out of a bag that couldn't be explained, and that was an important factor in Jones. The officer in Jones asked what the bulge was, and the gentleman there was able to provide an explanation, and in that case, the court, I think, found that fact very significant because it distinguished Jones on that basis from another one of this court's cases in Favela, in which the person wasn't able to provide any sort of explanation. And here, not only has Ms. Moreno not provided an explanation, she denied the mere existence of something that was just readily apparent and was making movements and attempts to try to conceal that. In that sense, I think this case is even stronger than Roggeman because what Roggeman says is even there, the district court had discounted the fact that it was knife and it was laid out, and there were these other factors, and the aid circuit there said, even if we were to grant the district court's minimizing of the significance of those facts, here there was a bulge, and the bulge was seen before they touched it. And under our case law and under many other circuit case laws, seeing a bulge in that kind of situation was a substantial factor to create reasonable suspicion. Thank you. Counsel, do you agree that the ultimate standard review here is de novo whether the pat-down has reasonable suspicion? That's right, Your Honor. It's a mixed question of law and fact. Of course, the subsidiary, or Claire Everett, the subsidiary fact findings. Right. Yes, that's right. Thank you. Thank you, Your Honor. I'm still having questions about Dickerson and Roggeman and how they fit together. Because I look at the facts of Dickerson, and you have a guy who's walking out of a place that is a known place where they deal drugs. He walks out. He observes the officers. He turns. He walks away. The officers stop him. They pat him down. And they have sort of a plain feel of something that they suspect to be narcotics, right? And I look at that. And I look at Roggeman. I look at the facts of that case. And I agree with Judge Gross that it's in between. But I'm having a hard time with the idea that you're hanging your whole hat apparently on I see the bulge. The bulge might be a pair of glasses. It might be a book. It might be a bomb. It might be drugs. We have a whole lot of other drug trafficking suspicion going on. So there's, I mean, that's lurking in the background. And that we're supposed to kind of get to the conclusion that because she denies its existence, that that's enough to push it over the edge. That just, you know, if she had said anything at all about it, you know, that would have been plausible. That would have ended the discussion, right? You said it was a book, a pair of glasses in a case, a, you know, I don't know, you know, something else that might be perfectly lawful. And it's not very easily accessible because it's under her clothing, you know. It really is about the denial. At the end of the day, that's the fact that creates this distinction in your world. I wouldn't say that that's the fact that creates the only important distinction here. You know, there's a lot of, I think, other important distinctions where, you know, we have, you really can't discount the lead up to everything that was happening well before Sergeant Miola had encountered Ms., or had talked to Ms. Moreno and touched her, and asked her to move on and touch her balls. We had conflicting itinerary information. We had a source for, a source city for drugs. We had all these other facts that an officer, especially Sergeant Miola, who's very experienced and testified that he handles a number of interdiction cases a year, you know, in his position and understanding everything that was happening, I think especially seeing the balls and someone was concealing it and someone that was hiding it and saying no, no, no, denying its mere existence, I think it goes a very far way to establishing, you know, the reasonable suspicion here and the basis of a reasonable officer in his place to make that decision. Are bombs found in Omaha on a regular basis? Well, I think you have to look at it from the perspective of Sergeant Miola, who has counterterrorism training in the proximity to September 11th, and you have to, you know, kind of consider those circumstances if that is a plausible, I think, belief that a reasonable officer in his position could come to. The other fact is, and I think it was mentioned earlier, you know, this court has previously said that if you suspect that a drug transaction is happening, you know, there's also, that's a reasonable suspicion to believe, you know, especially if you've seen a lot of drug trafficking, that there's firearms involved and that those could be involved. And especially if someone has a huge package, let's say you assume that it's solely just drugs, you know, that's valuable property, that's something that people would want to protect. And you're in a low-security bus station, it's not like an airport where you're going through metal detectors or anything like that. You know, there's some cunning people coming off the bus, it's a very quick and fast-paced place with a lot of people trafficking through there. Okay, I think Judge Erickson is concluded, and if so, your time is concluded also. Mr. Hanson, back to you for rebuttal. Thank you. You're muted, unmute. My apologies. Just to continue on what Mr. Schadl was saying in terms of the context of where they were at, I made sure the record was clear, and Judge Gras knows this. The bus station at 16th and Jackson is 200 yards from the Douglas County Jail. There are police officers coming in and out of that facility within a stone's throw of the bus station every hour of the day. 200 yards is not a stone's throw, but more, would you address more importantly, yeah, I couldn't resist, but would you address more importantly, because we're all at about the same place in this case, Roggeman v. Minnesota v. Dickerson, and if you could really help us on Minnesota v. Dickerson, we'd understand the case. Again, the plain field doctrine is established by the Supreme Court, I get that, but there has to be a reasonable suspicion. I mean, it all loops together, and it's just not there in this case. You've got a little old lady coming off a bus, answering all the questions of the officer. There's just no concern that she's armed and dangerous. Okay, so what about the fact that when she was asked if she had anything strapped to her body, she denied it, even though it was plainly visible? I mean, those are the facts. She denied it. There wasn't much conversation about that, from what I remember, but she did deny that she had anything strapped to her body. My suggestion is, at that point, a proper pat-down, which was the least intrusive means at that point, could have occurred, just as it could have occurred in a keno. But the officer did not perform the pat-down. He went right for the bulge and touched and manipulated the bulge. Is that a limited pat-down, counsel? We've had that argued in some cases. Is that a limited pat-down? It's a limited pat-down to make sure that she's not armed and dangerous. But that didn't occur here. And again, the magistrate judge was highly skeptical of the claim that Moreno might be armed and dangerous, and dismissed it outright as a viable justification for the touching of the bulge. And again, this court owes particular deference to the credibility findings of a judge, that Judge Rossiter dismissed outright when he said that Sergeant Miola initiated a protective frisk. This was not a protective frisk. This was a search without probable cause, and I would ask this court to reverse the decision of the district court and order suppression of the evidence. Unless there are any other questions, I would submit the matter. I don't see other questions, so thank you both for the argument. Case number 19-3483 is submitted for decision. Ms. Duncan-McKee, please continue.